FILED
IN OPEN COURT
APR 29 2021
CLERK, U.S. DISTRICT COURT
NORFOLK, VA

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

UNITED STATES OF AMERICA )
)
v. ) CRIMINAL NO. 2:21cr39
)
LORI ANN TALENS, )
)
*Defendant*. )

STATEMENT OF FACTS

By signing below, the parties stipulate that the allegations in the pending criminal information and the following facts are true and correct, and that had the matter gone to trial the United States would have proven them beyond a reasonable doubt.

1. Beginning in or about April 2017, and continuing through in or about May 2020, the exact dates being unknown, the defendant LORI ANN TALENS, along with Pacifico Talens, and others both known and unknown, devised a scheme and artifice to defraud by means of material false and fraudulent pretenses, representations, and promises, and in execution of said scheme, utilized the United States Post Office and the transmission of various signs, signals, and writings over interstate wire and radio communications in interstate and foreign commerce.

2. The Coupon Information Center ("CIC") is a not-for-profit coalition of consumer product manufacturers based in Naples, Florida, that provides coupon integrity services to its members, coupon issuing manufacturers. Founded in 1986, the CIC provides retailers with notifications about counterfeit coupons that have been identified in the retail environment. A file containing a listing of known counterfeit coupons is provided to retailers who can then enter the coupons into their point of sale ("POS") systems as counterfeit to avoid further redemptions

LAT
LHW, Jr
JK

and losses. The CIC provides educational webinars to retailers and acts as a liaison between its members and law enforcement.

3. On June 15, 2017, the CIC was contacted by an individual who is a coupon enthusiast and who lives outside of the Commonwealth of Virginia. This individual stated he or she was aware of an individual who was making several counterfeit coupons. The Executive Director at the CIC, contacted the individual to verify and discuss the information. The individual further agreed to purchase counterfeit coupons at the direction of the CIC and to provide them to the CIC.

4. In March 2018, the CIC contacted the United States Postal Inspection Service to provide the information they had gathered from the individual regarding the manufacture and sale of counterfeit coupons. According to the CIC, from June 2017 through March 2018, the individual made approximately five purchases of coupons and provided them to the CIC. From April 2018 through December 2019, after an investigation was started by law enforcement, the individual made approximately four additional purchases for the CIC. All of these coupons were confirmed to be counterfeit and were near, equal to, or even exceeded the full retail value of the product indicated on the coupon.

5. According to the individual, he/she was invited to join a private messaging group that offered counterfeit coupons for sale on Telegram under the moniker "MasterChef." As noted above, the individual was a coupon enthusiast and the individual's activity in various couponing communities online got him/her invited to join this private messaging group. The individual communicated with MasterChef and others in the Telegram group regarding various counterfeit coupons being offered for sale. As part of these communications, MasterChef



LHW, Jr
JK

shared photographs of the various counterfeit coupons. The individual provided agents with multiple cell phone screen shots of conversations with MasterChef as well as promotions and coupons being advertised for sale by MasterChef.

6. In October 2017, the individual placed an order for coupons with "MasterChef" through Telegram. In October 2017, a USPS Priority Mail flat rate envelope was sent to the individual via the United States Postal Service. The return address indicated on the USPS Priority Mail mailing is Masterchef Artwork, 10047 Wincopia Farms Way, Laurel, Maryland 20723. The USPS Priority Mail was introduced to the mail stream in Norfolk, Virginia 23501, located in the Eastern District of Virginia. The USPS Priority Mail was delivered by the USPS to the individual. The mailing was then forwarded by the individual to the CIC unopened. The CIC opened the USPS Priority Mail envelope and it was confirmed to contain counterfeit coupons.

7. Throughout 2017-2019, the individual placed orders through the Telegram app for counterfeit coupons and received them via the United States Postal Service. All of the parcels that the individual received containing the counterfeit coupons displayed a return address from either "MasterChef Designs" or "MasterChef Artwork" with various Laurel, Maryland, street and Post Office box addresses. Agents contacted a supervisor at the Laurel, Maryland, Post Office to determine the existence and ownership of these addresses and was informed that all of the P.O. Box addresses were fictitious and did not exist. In an effort to determine the identity of MasterChef, the agents asked the individual if he/she had any idea where MasterChef was located. The individual informed the agents that one of the pictures MasterChef sent contained longitude and latitude data in the file's metadata. The individual provided the agents the



LHW, JR
JC

longitude and latitude coordinates which resolved to an approximate location in Virginia Beach, Virginia, where the defendant LORI ANN TALENS and her husband Pacifico Talens resided.

8. Based upon this information, investigators were able to obtain a federal search warrant for the defendant's residence. In May 2020, agents executed the warrant on the defendant's residence and discovered numerous counterfeit coupons, printers, and electronic devices used in the manufacture of counterfeit coupons. Agents seized these materials for later analysis. During the search, investigators were able to confirm that the defendant was in fact "MasterChef," that she operated an online counterfeit coupon business across the United States, and that she had nearly $1 million in counterfeit coupons scattered throughout her house. The defendant was the organizer of the Telegram counterfeit coupon group and used Facebook and other online social media sites to find customers to buy her counterfeit coupons. The defendant's husband, Pacifico Talens, was aware of the defendant's activities, profited off them, and assisted the operation of the scheme by shipping packages of counterfeit coupons for her, as well as other tasks in furtherance of the scheme. The defendant used wire communications such as Telegram and Facebook in furtherance of the scheme and sent and received electronic transmissions from her location in the Eastern District of Virginia, all across the United States. Furthermore, the defendant used the United States Postal Service and other commercial delivery services to deliver to her customers counterfeit coupons.

9. A careful review of the materials seized from the defendant's residence was conducted. As noted above, the defendant was in possession of approximately $1 million of counterfeit coupons in her residence. Furthermore, a forensic analysis of the defendant's computer revealed the design for approximately 13,315 counterfeit coupons. Many of the



LAT LHW JK

coupon images recovered from the defendant's computer are considered to be "Frankenstein" counterfeits. Frankenstein counterfeits are created by using images, text, and barcode elements from multiple manufacturers. For example, the counterfeiter may take a product image from one manufacturer's website, the text from a different manufacturer's coupon, and a barcode from a third manufacturer, or the counterfeiter may generate a barcode using a different manufacturer's identification number. This information was used to create an Excel spreadsheet listing the scannable barcodes and reference information, such as the coupon's stated value and the brand or manufacturer name printed on the coupon images. As part of the process, duplicates were removed.

10. Given the scope of the project and the potential for confusion associated with the Frankenstein counterfeits, the investigative team determined that the most efficient and accurate method to determine the financial impact of the case was to provide the spreadsheet to the companies that process, and account for, redeemed coupons for virtually all large coupon issuing manufacturers. These companies used their computer systems to document the total dollars paid and refused to be paid by manufacturers for coupon submissions associated with each of the barcodes listed in the spreadsheet.

11. Total dollars paid and refused is an appropriate, but conservative, measure of the loss caused by a counterfeit coupon. Once a counterfeit coupon has been accepted at retail and a discount given to the presenter, then either the manufacturer or the retailer (or some combination thereof) must bear the loss attributable to the counterfeit coupon. "Dollars paid" represents the amount paid by the manufacturer to the retailer for a particular counterfeit coupon;

"Refused to be paid" represents the amount in dollars that the manufacturer refused to pay, typically because the coupon has been recognized as counterfeit subsequent to acceptance.

12. The combination of dollars paid and dollars refused represents a conservative calculation of the loss from a counterfeit coupon, because coupons entail other costs apart from their face value and/or the value stated on the barcode. For example, coupons typically include an 8-cent handling fee payable by the manufacturer; this is not included in the analysis. Further, the coupon redemption process in general, and the processes for dealing with counterfeit or other invalid coupons in particular, generate various costs for manufacturers and retailers that likewise are not included in the analysis.

13. Based upon the process described above, a conservative calculation of this case's financial impact is $31,817,997.05 for images that were specifically designated as counterfeit coupons paid out by the coupon processing companies. In addition, the defendant was in possession of nearly $1 million in counterfeit coupons at her residence, making the total loss amount of this case at just under $33 million.

14. The defendant was also engaged in a scheme and artifice to defraud the Virginia Medical Assistance Program (Medicaid), a health care benefit programs as defined in Title 18, United States Code, Section 24(b), and to obtain by means of false and fraudulent pretenses, representations, and promises, any of the money and property owned by, and under the custody and control of said health care benefit program, in connection with the delivery and payment for health care benefits, items, and services. From November 2015 through February 2020, the defendant completed numerous applications for Medicaid benefits and submitted to interviews by Medicaid representatives. During none of these interviews or on none of these applications



LHW, Jr.

JK

did the defendant disclose the income of Pacifico Talens or her income from her counterfeit coupon business. Had she disclosed these incomes, she would have been declared ineligible to receive Medicaid benefits. The Medicaid program is funded primarily by federal funds. Medicaid suffered a loss of approximately $38,554.89 based on the defendant's conduct.

15. In addition, the defendant engaged in a scheme and artifice to defraud the Supplemental Nutrition Assistance Program (SNAP). SNAP is a federal program that provides nutrition benefits to low-income individuals and families that are used at stores to purchase food. The program is administered by the USDA Food and Nutrition Service (FNS) through its nationwide network of FNS field offices. From November 2018 through May 2020, the defendant filed numerous SNAP applications and on none of these applications did the defendant disclose the income of Pacifico Talens or her income from her counterfeit coupon business. Had she disclosed these incomes, she would have been declared ineligible to receive SNAP benefits. SNAP suffered a loss of approximately $7,538.00 based on the defendant's conduct.

16. The acts taken by the defendant, LORI ANN TALENS, in furtherance of the offenses charged in this case, including the acts described above, were done willfully and knowingly with the specific intent to violate the law. The defendant acknowledges that the foregoing statement of facts does not describe all of the defendant's conduct relating to the offenses charged in this case nor does it identify all of the persons with whom the defendant may have engaged in illegal activities.





Respectfully submitted,

Raj Parekh
Acting United States Attorney

By: ______________________________
Joseph L. Kosky
Assistant United States Attorney

After consulting with my attorney and pursuant to the plea agreement entered into this day between the defendant, LORI ANN TALENS, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

LORI ANN TALENS
Defendant

I am Larry Woodward, LORI ANN TALENS's attorney. I have carefully reviewed the above Statement of Facts with her. To my knowledge, her decision to stipulate to these facts is an informed and voluntary one.

Larry Woodward, Esquire
Attorney for LORI ANN TALENS