IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Norfolk Division

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 2:21cr39 |
| | ) | |
| **LORI ANN TALENS,** | ) | |
| | ) | |
| *Defendant.* | ) | |

**GOVERNMENT'S POSITION WITH RESPECT TO
SENTENCING FACTORS IN THE PRESENTENCE REPORT**

COMES NOW the United States of America, by undersigned counsel, and in accordance with Section 6A1.2 of the Sentencing Guidelines and Policy Statements and this Court's policy regarding guidelines sentencing, the government hereby represents that it has reviewed the presentence report (PSR) prepared by the United States Probation Officer. After reviewing the Presentence Investigation Report and applying the factors of Title 18, United States Code, Section 3553(a) to this case, the government's position is that a sentence of 235 months of incarceration is appropriate.

**I.      The United States Has No Objection to the PSR**

The United States hereby represents that it has no objections to the facts, the findings or to the calculations of the presentence report.   The United States has received several victim impact statements received from the victims in this case and have forwarded them to the Court and defendant.   Should any more victim impact statements be received, the government will forward them to the Court and defendant prior to sentencing.   The government intends to call at least one witness to testify at sentencing.   The government intends to introduce the testimony of Bud Miller, Director of the Coupon Information Center (CIC), an industry trade group that researches

and fights coupon fraud.    The government expects Mr. Miller to generally testify on the impact coupon fraud has on retailers and manufacturers.

## II.     A Sentence of 235 Months of Incarceration Complies with the Factors and Considerations Set Forth in 18 U.S.C. § 3553(a) and (b).

In *United States v. Booker*, 543 U.S. 220, 264 (2005), the Supreme Court made clear that sentencing courts should "consult [the Sentencing] Guidelines and take them into account when sentencing."  *See also United States v. Biheiri*, 356 F.Supp.2d 589, 593 (2005) ("Justice Breyer's majority opinion in [*Booker*] sensibly teaches that the Sentencing Guidelines must still be taken into account pursuant to 18 U.S.C. § 3553(a) in fashioning an appropriate sentence.").   The Supreme Court provided this direction to promote the sentencing goals of Congress, namely to "'provide certainty and fairness in meeting the purposes of sentencing, [while] avoiding unwarranted sentencing disparities[.]'"   *Booker,* 543 U.S. at 264 (*quoting* 28 U.S.C. § 991(b)(1)(B)).    The Fourth Circuit has provided the following guidance in the wake of *Booker*:

> A district court shall first calculate (after making the appropriate findings of fact) the range prescribed by the guidelines.   Then, the court shall consider that range as well as other relevant factors set forth in the guidelines and those factors set forth in [18 U.S.C.] § 3553(a) before imposing the sentence.

*United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005).   Thus, sentencing courts must consider the factors outlined in 18 U.S.C. § 3553(a).

Section 3553(a) requires a sentencing court to consider the nature and circumstances of the offense and the history and characteristics of the defendant, as well as the need for the sentence imposed to:   reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.   Applying these sentencing factors to the facts of this case demonstrates that a sentence of 235 months of

incarceration is appropriate and reasonable.

      A.      **Nature and Circumstances of the Offense**

The defendant, along with her husband and co-defendant Pacifico Talens constructed what may be one of the biggest counterfeit coupon schemes in history. Utilizing the internet, social media, and expertise she learned from her experience in the retail world, Lori Ann Talens perfected the art of counterfeiting coupons. Her skill was such that the coupons she created were virtually indistinguishable from genuine coupons and took counterfeit coupon experts to positively confirm them as counterfeit. The coupons in question were printed on high quality glossy paper, contained corporate logos and images of the product in questions, and working barcodes that would scan as legitimate when presented at a supermarket or department store. The only suspicious aspect of the coupons was the amount of discount they offered. In most instances, the Talens's counterfeit coupons applied a discount equal to, or in many instances, greater than the retail price of the various items. Thus, using these coupons would permit shoppers to get retail merchandise completely for free and if the value of the coupon exceeded its retail value, cause the retailers to pay the shopper for purchasing the item.

The Talens's operated their counterfeit coupon empire out of their home in Virginia Beach. Lori Ann Talens ran a coupon enthusiast group on Facebook that on its face, was for legitimate couponing. However, Lori Ann used it to recruit people willing to buy her counterfeit coupons. Once a person was vetted and vouched for by another member of the Lori Ann's counterfeit coupon group, Lori Ann would invite the person to her Telegram app. Telegram is an app that permits users to communicate through completely encrypted channels and deletes messages. Lori Ann's Telegram group routinely discussed buying and selling counterfeit coupons and Lori Ann coordinated the sale of her counterfeit coupons through the Telegram group.

The scale of the Talens's counterfeit coupon scheme was truly massive. As the PSR notes, the defendants are responsible for at least $31 million in losses to manufacturers and retailers across the country. The victim list contains approximately one hundred victim companies that suffered individual losses as high as $8 million. When agents executed a search warrant on the Talens's residence, they discovered a computer with approximately 13,000 images of counterfeit coupons on it. They further found approximately $1 million worth of counterfeit coupons in the Talens's residence. Moreover, investigation into the Talens's bank accounts identified at least 2,086 unique customers from around the country who purchased counterfeit coupons from the Talens's. In total, the Talens's received at least $396,000 in compensation from selling the counterfeit coupons.

Lori Ann was the mastermind, architect, and engine of this fraud scheme. Lori Ann directly created and printed the counterfeit coupons, she operated the online operation, to include the Facebook coupon groups and the Telegram applications, she took the orders for counterfeit coupons and created them for her customers, she directed her husband Pacifico to ship the boxes and she created a whole false moniker of "MasterChef" to perpetuate the scheme. But for Lori Ann's expertise, motivation, and determination, this scheme could not have occurred. She deserves the lion's share of the credit for its success, and consequentially, must receive the lion's share of punishment for the harm she has caused.

The Talens's scheme was massive in scope, technically sophisticated, and intricately executed. The Court needs to consider these factors in weighing the nature and circumstances of the offense. The Court also needs to consider that this was an ongoing fraud scheme that lasted at least three years in duration. Lori Ann and Pacifico Talens began their operation in at least 2017 and only stopped when investigative agents executed a search warrant on their

residence in 2020.   But for the law enforcement intervention, the Talens's fraud scheme would be continuing to this day.

      **B.**      **Characteristics and History of the Defendant**

The defendant is a criminal history category I with a relatively minor criminal history. The defendant is intelligent and hard working as evidenced by her educational and work history. Nonetheless, she is responsible for one of the largest coupon fraud schemes ever discovered in the United States.   As noted above, the defendant is the primary culprit in this fraud scheme and but for her participation in it, the crime would have never occurred.   The defendant also should receive credit for accepting responsibility, pleading guilty, and agreeing to be interviewed and cooperative with case agents.   For these reasons, the United States would move for the third point of acceptance of responsibility pursuant to Section 3E1.1(b) of the Sentencing Guidelines.

      **C.**      **Deterrence**

The Court must consider deterrence in fashioning a sentence, both general deterrence and specific deterrence.   Although the defendant would appear to present a relatively low risk of recidivism, the government would note that the defendant's record suggests she would not be a person who would engage in this type of fraudulent behavior in the first instance.   As such, the Court must carefully consider a sentence that will deter the defendant from contemplating participating in any fraudulent activity in the future.   A sentence of 235 months will most likely deter the defendant from engaging in future criminal activity.

Likewise, the Court must consider the goal of general deterrence in sending a message to the community at large that fraud schemes such as these will not be tolerated.   Coupon fraud has become more prevalent as the internet has developed, as social media sites have permitted individuals with nefarious intent to associate with one another, and as technology has evolved to permit people to create high quality counterfeit coupons out of their home at little cost.

Together, these factors have made it easier for fraudsters of all stripes, including those committing counterfeit coupon frauds, to swindle individuals and businesses out of millions of dollars. The defendant and her husband caused over $31 million in losses to merchants and manufacturers. Such a staggering amount of money is sure to tempt other fraudsters to duplicate the Talens's success. A significant sentence of incarceration is therefore necessary to dissuade would be fraudsters from attempting the same fraud themselves.

### D. Other Relevant Factors

Section 3553(a) also addresses other the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, and to prevent unwarranted sentencing disparities. Here, a 235 month sentence would adequately address all of these concerns.

### III. Conclusion

For these reasons, as well as additional reasons to be more fully articulated during the sentencing hearing on this matter, the United States respectfully requests that the Court sentence the defendant to a term of 235 months of confinement.

RAJ PAREKH
ACTING UNITED STATES ATTORNEY

By _____
Joseph L. Kosky
Assistant United States Attorney
Attorney for the United States
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, Virginia 23510
Office Number (757) 441-6331
Facsimile Number (757) 441-6689
E-Mail Address - joseph.kosky@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on the 7th day of September, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Lawrence H. Woodward, Jr., Esquire
Ruloff, Swain, Haddad, Morecock, Talbert & Woodward, P.C.
317 30th Street
Virginia Beach, VA 234515

I hereby certify that on the 7th day of September, 2021, a true copy of the foregoing government's response was sent via electronic mail copy to:

Tara R. Gill
United States Probation Office
827 Diligence Drive, Suite 210
Newport News, Virginia 23606

                                                Joseph L. Kosky
                                                Assistant United States Attorney
                                                Attorney for the United States
                                                United States Attorney's Office
                                                101 West Main Street, Suite 8000
                                                Norfolk, Virginia 23510
                                                Office Number (757) 441-6331
                                                Facsimile Number (757) 441-6689
                                                E-Mail Address - joseph.kosky@usdoj.gov